UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                                    )
JUDICIAL WATCH, INC,                                )
                                                    )
        Plaintiff,                                  )
                                                    )
              v.                                    )        Civ. A. No. 1:19-cv-00177-EGS
                                                    )
U.S. DEPARTMENT OF JUSTICE,                         )
                                                    )
        Defendant.                                  )
———————————————————————)

**INDEX OF EXHIBITS TO**
**DECLARATION OF MICHAEL G. SEIDEL**

Exhibit A, Judicial Watch FOIA Request (Jan. 5, 2018)

Exhibit B, FBI Letter of Jan. 16, 2018

Exhibit C, FBI Letter of July 25, 2018

Exhibit D, Judicial Watch Appeal Letter (Aug. 14, 2018)

Exhibit E, FBI Letter of Aug. 28, 2018

Exhibit F, DOJ-OIP Letter of Mar. 1, 2019

Exhibit G, FBI Letter of Sept. 20, 2019

Exhibit H, FBI Letter of June 15, 2020

Exhibit I, FBI Letter of Sept. 4, 2020 & Responsive Records As Produced

Exhibit J, *Vaughn* Index

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
JUDICIAL WATCH, INC,                                )
                                                    )
         Plaintiff,                                 )
                                                    )
             v.                                     )          Civ. A. No. 1:19-cv-00177-EGS
                                                    )
U.S. DEPARTMENT OF JUSTICE,                          )
                                                    )
         Defendant.                                 )
_____)

# **EXHIBIT A**



**Judicial Watch**®
*Because no one
is above the law!*

January 5, 2018

**VIA CERTIFIED MAIL**

FBI
Record/Information Dissemination Section
Attn: FOIPA Request
170 Marcel Drive
Winchester, VA 22602-4843

**Re:  Freedom of Information Act Request**

Dear Freedom of Information Officer:

Judicial Watch, Inc. ("Judicial Watch") hereby requests that the Federal Bureau of Investigation ("FBI") produce the following records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

> **Any and all records of communication, including but not limited to emails, text messages and instant chats, sent between former FBI General Counsel James Baker and any of the following individuals: former British intelligence officer Christopher Steele, principal of Orbis Business Intelligence, Ltd.; Glenn Simpson of Fusion GPS; former Fusion GPS contractor Nellie Ohr; and/or David Corn, a reporter with *Mother Jones* magazine.**
>
> **The time frame for the requested records is January 1, 2016 to the present.**

Please determine whether to comply with this request within the time period required by FOIA and notify us immediately of your determination, the reasons therefor, designee.  5 U.S.C. § 552(a)(6)(i).  Please also produce all responsive records in an electronic format ("pdf" is preferred), if convenient.  We also are willing to accept a "rolling production" of responsive records if it will facilitate a more timely production.

Judicial Watch also hereby requests a waiver of both search and duplication fees. We are entitled to a waiver of search fees because we are a "representative of the news media."  *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Cause of Action v. Federal Trade Comm.*, 799 F.3d 1108 (D.C. Cir. 2015); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989).  For more than twenty years, Judicial Watch has used FOIA and other investigative tools to gather information about the operations and activities of government, a subject of undisputed public interest.  We submit over 400 FOIA requests

JAN 16 2018

**Federal Bureau of Investigation/FOIA Request**
**January 5, 2018**
**Page 2 of 3**

annually. Our personnel, which includes experienced journalists and professional writers on staff and under contract, use their editorial skills to turn this raw information into distinct works that are disseminated to the public via our monthly newsletter, which has a circulation of over 300,000, weekly email update, which has over 600,000 subscribers, investigative bulletins, special reports, www.judicialwatch.org website, *Corruption Chronicles* blog, and social media, including Facebook and Twitter, among other distribution channels. We have authored several books, including *Corruption Chronicles* by Tom Fitton (Threshold Editions, July 24, 2012), and another book, *Clean House* by Tom Fitton (Threshold Editions, Aug. 30, 2016), is forthcoming. In 2012, we produced a documentary film, "District of Corruption," directed by Stephen K. Bannon. Our "news media" status has been confirmed in court rulings. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000). As a tax exempt, 501(c)(3) non-profit corporation, we have no commercial interests and do not seek the requested records for any commercial use. Rather, we intend to use the requested records as part of our on-going investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

Judicial Watch also is entitled to a waiver of both search fees and duplication fees because "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records undoubtedly will shed light on "the operations or activities of the government." *Cause of Action*, 799 F.3d at 1115 (*quoting* 5 U.S.C. § 552(a)(4)(A)(iii)). Disclosure also is "likely to contribute significantly to the public understanding" of those operations or activities because, among other reasons, Judicial Watch intends to disseminate both the records and its findings to "a reasonably broad audience of persons interested in the subject" via its newsletter, email updates, investigative bulletins, website, blog, and its other, regular distribution channels. *Cause of Action*, 799 F.3d at 1116 (*quoting Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994)). Again, Judicial Watch does not seek the requested records for any commercial benefit or for its own "primary" benefit, but instead seeks them as part of its ongoing investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

In the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch agrees to pay up to $300.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172 or bmarshall@judicialwatch.org.

Thank you for your cooperation.

**Federal Bureau of Investigation/FOIA Request**
**January 5, 2018**
**Page 3 of 3**

Very respectfully,

William F. Marshall
Judicial Watch, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
JUDICIAL WATCH, INC,                                  )
                                                      )
        Plaintiff,                                    )
                                                      )
                v.                                    )        Civ. A. No. 1:19-cv-00177-EGS
                                                      )
U.S. DEPARTMENT OF JUSTICE,                           )
                                                      )
        Defendant.                                    )
_____)

# EXHIBIT B



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

January 16, 2018

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH
SUITE 800
425 THIRD STREET, SW
WASHINGTON, DC 20024

FOIPA Request No.: 1393291-000
Subject: Any and All Records of
Communication between James Baker and
Christopher Steele, Glenn Simpson, Nellie
Ohr and/or David Corn
(January1, 2016 - Present)

Dear Mr. Marshall:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI.   Below
you will find check boxes and informational paragraphs about your request, as well as specific
determinations required by these statutes.   Please read each one carefully.

☑   Your request has been received at FBI Headquarters for processing.

☐   Your request has been received at the _____ Resident Agency / _____ Field Office
and forwarded to FBI Headquarters for processing.

☐   The subject of your request is currently being processed and documents will be released
to you upon completion.

☐   Release of responsive records will be posted to the FBI's electronic FOIA Library (The
Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑   Your request for a public interest fee waiver is under consideration, and you will be
advised of the decision at a later date.   If your fee waiver is not granted, you will be
responsible for applicable fees per your designated requester fee category below.

☑   For the purpose of assessing any fees, we have determined:

☐   As a commercial use requester, you will be charged applicable search, review,
and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

☑   As an educational institution, noncommercial scientific institution or
representative of the news media requester, you will be charged applicable
duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

☐   As a general (all others) requester, you will be charged applicable search and
duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
JUDICIAL WATCH, INC,                      )
                                          )
        Plaintiff,                        )
                                          )
            v.                            )        Civ. A. No. 1:19-cv-00177-EGS
                                          )
U.S. DEPARTMENT OF JUSTICE,               )
                                          )
        Defendant.                        )
_____)


# EXHIBIT C



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 25, 2018

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH
SUITE 800
425 THIRD STREET SW
WASHINGTON, DC 20024

Request No.: 1393291-000
Subject: Any and All Records of
Communication between James Baker and
Christopher Steele, Glenn Simpson, Nellie
Ohr and/or David Corn.
(January 1, 2016 - Present)

Dear Mr. Marshall:

This is in response to your Freedom of Information Act (FOIA) request.   The FBI has completed its search for records responsive to your request.   Below you will also find informational paragraphs relevant to your request.   Please read each item carefully.

Based on the information you provided, we conducted a search of the locations or entities where records responsive to your request would reasonably be found.   We were unable to locate records responsive to your request.   Therefore, your request is being administratively closed.   If you have additional information that may assist in locating records concerning the subject of your request, please submit a new request providing us with such details, and we will conduct an additional search.

It is unnecessary to adjudicate your request for a fee waiver, as no fees are being assessed.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.   See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records subject to the requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us."   The FOIPA Request Number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Enclosed for your information is a copy of the FBI Fact Sheet.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Information Management Division

Enclosure

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JUDICIAL WATCH, INC,                    )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )        Civ. A. No. 1:19-cv-00177-EGS
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
        Defendant.                      )
_____)


# EXHIBIT D

  

**Judicial Watch**®

*Because no one
is above the law!*

August 14, 2018

RECEIVED

AUG 20 2018

Office of Information Policy

**VIA CERTIFIED MAIL**

Director
Office of Information Policy (OIP)
US Department of Justice
Suite 11050
1425 New York Avenue, NW
Washington, DC 20530-0001

**Re: Freedom of Information Act Appeal – FOIPA Request # 1393291-000**

Dear Sir:

On January 5, 2018 I submitted a Freedom of Information Act ("FOIA") request pursuant to 5 U.S.C. § 552 to the Federal Bureau of Investigation ("FBI") seeking the following records:

> *Any and all records of communication, including but not limited to emails, text messages and instant chats, sent between former FBI General Counsel James Baker and any of the following individuals: former British intelligence officer Christopher Steele, principal of Orbis Business Intelligence, Ltd.; Glenn Simpson of Fusion GPS; former Fusion GPS contractor Nellie Ohr; and/or David Corn, a reporter with Mother Jones magazine.*
>
> *The time frame for the requested records is January 1, 2016 to the present.*

I received a letter from David M. Hardy, Section Chief of the FBI's Record/Information Dissemination Section dated July 25, 2018[1] notifying me that the FBI could locate no records response to my request.

I respectfully appeal this determination and request that a more thorough search for records be conducted and any response materials provided.

If you do not understand this appeal or any portion thereof, or if you feel you require clarification, please contact us immediately at 202-646-5172 or bmarshall@judicialwatch.org.

Thank you for your cooperation.

---

[1] A copy of Mr. Hardy's letter is enclosed for your convenience.

425 Third St., SW, Suite 800, Washington, DC  20024  ▪ Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 ▪ Email: info@JudicialWatch.org ▪ www.JudicialWatch.org

27

**FBI/FOIA Appeal**
**August 14, 2018**
**Page 2 of 2**

Very respectfully,

William F. Marshall
Judicial Watch, Inc.

Enclosures

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JUDICIAL WATCH, INC,                    )
                                        )
        Plaintiff,                      )
                                        )
            v.                          )          Civ. A. No. 1:19-cv-00177-EGS
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
        Defendant.                      )
_____)

# EXHIBIT E

08/28/2018


Mr. William F. Marshall
Judicial Watch, Inc.
Suite 800
425 Third Street SW
Washington, DC 20024
bmarshall@judicialwatch.org

Dear Mr. Marshall,

    This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation regarding Request No. 1393291 was received by the Office of Information Policy (OIP) of the U.S. Department of Justice on 08/20/2018.

    OIP has the responsibility of adjudicating such appeals.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number DOJ-AP-2018-007890.  Please mention this number in any future correspondence to this Office regarding this matter.  Please note that if you provide an e-mail address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

    We will notify you of the decision on your appeal as soon as we can.  If you have any questions about the status of your appeal, you may contact me at (202) 514-3642.  If you have submitted your appeal through FOIAonline, you may also obtain an update on the status of your appeal by logging into your account.


                        Sincerely,

                        *Priscilla Jones*

                        Priscilla Jones

                        Supervisory Administrative Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JUDICIAL WATCH, INC,                    )
                                        )
        Plaintiff,                      )
                                        )
            v.                          )        Civ. A. No. 1:19-cv-00177-EGS
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
        Defendant.                      )
_____)

# EXHIBIT F



**U.S. Department of Justice**

Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

William F. Marshall
Judicial Watch, Inc.
Suite 800
425 Third Street, SW
Washington, DC  20024
bmarshall@judicialwatch.org

Re:    Appeal No. DOJ-AP-2018-007890
       Request No. 1393291
       CDT:EMY

**VIA:  Email**

Dear William Marshall:

    You appealed from the action of the Federal Bureau of Investigation on your Freedom of Information Act request for access to all records of communication sent between "former FBI General Counsel James Baker and any of the following individuals: former British intelligence officer Christopher Steele, principal of Orbis Business Intelligence, Ltd.; Glenn Simpson of Fusion GPS; former Fusion GPS contractor Nellie Ohr; and/or David Corn, a reporter with Mother Jones magazine" from January 1, 2016 to the date of your request.  I note that your appeal concerns the adequacy of the FBI's search for records.  Please note that this Office was closed due to a lapse in funding appropriations between December 22, 2018 and January 25, 2019, which resulted in a delay in responding to your appeal.

    I have determined that you filed a lawsuit concerning the FBI's action in the United States District Court for the District of District of Columbia.  As indicated in the Department of Justice's regulations located at 28 C.F.R. § 16.8(b)(2) (2018), an appeal ordinarily will not be acted upon by this Office if the FOIA request becomes the subject of litigation.  For this reason, I am closing your appeal file in this Office.

    If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

                                        Sincerely,

                                                                3/1/2019

                                        X _Sean O'Neill_____

                                        Sean R. O'Neill
                                        Chief, Administrative Appeals Staff
                                        Signed by: SEAN O'NEILL

UNITED STATES DISTRICT COURT
F OR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 1:19-cv-00177-EGS |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

# EXHIBIT G



**U.S. Department of Justice**

---

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

September 20, 2019

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH
SUITE 800
425 THIRD STREET SW
WASHINGTON, DC 20024

Judicial Watch v. DOJ, et.al.
Civil Action No.: 1:19-cv-00177
FOIPA Request No.: 1393291-000
Subject: Any and All Records of
Communication between James Baker and
Christopher Steele, Glenn Simpson, Nellie
Ohr, and/or David Corn
(January 1, 2016 - Present)

Dear Mr. Marshall:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request. To the extent that your request seeks 1) investigative records that have previously been officially, publicly acknowledged, 2) investigative records that have not been officially, publicly acknowledged, but whose existence or non-existence could be acknowledged without causing any harm protected by a FOIA Exemption, and 3) administrative records, we have conducted a search of the places reasonably expected to have records. However, we were unable to identify records responsive to your request.

To the extent that your request seeks investigative records that have not previously been officially, publicly acknowledged and the existence or non-existence of which could not be acknowledged without causing any protected harm, the FBI can neither confirm nor deny the existence of records responsive to your request pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).

Although your request is in litigation, you may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Six Floor, 441 G. Street, NW, Washington, D.C. 200001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site: https://www.foiaonline.gov/foiaonline/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Information Management Division

Enclosures

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| JUDICIAL WATCH, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civ. A. No. 1:19-cv-00177-EGS |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

_____)

# EXHIBIT H



**U.S. Department of Justice**

**Federal Bureau of Investigation**
Washington, D.C. 20535

June 15, 2020

MR. WILLIAM F. MARSHALL
c/o JAMES F. PETERSON, ESQUIRE
JUDICIAL WATCH
SUITE 800
425 THIRD STREET SW
WASHINGTON, DC 20024

> *Judicial Watch, Inc. v. United States Department of Justice*
> Civil Action No.: 1:19-cv-00177
> FOIPA Request No.: 1393291-000
> Subject: Any and All Records of Communication between James Baker and Christopher Steele, Glenn Simpson, Nellie Ohr and/or David Corn. (January 1, 2016 - Present)

Dear Mr. Marshall:

This letter is in response to your Freedom of Information/Privacy Acts (FOIPA) request. Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

Material consisting of 28 pages has been reviewed pursuant to Title 5, U.S. Code, Section 552, and this material is being withheld in its entirety by the FBI pursuant to subsections (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E),. See attached Explanations of Exemptions.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Information Management Division

Enclosure

In response to your Freedom of Information/Privacy Acts (FOIPA) request and subsequent civil action case pending in the U.S. District Court for the District of Columbia, enclosed is a deleted page information sheet representing Bates Stamped documents, FBI(19-cv-177)-1 through FBI(19-cv-177)-28. The enclosed documents represent the final release of information responsive to your request. To minimize costs to both you and the FBI, duplicate copies of the same document were not processed.

Please be advised that as of June 8, the Record Information/Dissemination Section (RIDS) resumed operating at full staffing levels amidst the ongoing COVID-19 national emergency.   The enclosed FOIPA release represents a work product that could be generated for you under these unprecedented circumstances and the limited time we were fully staffed during the month of June.   We appreciate your patience and understanding as we work to release as much information, to as many requesters as possible, as this emergency continues.

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.   Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].   FBI responses are limited to those records subject to the requirements of the FOIPA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**.   To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.**   The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Records for Incarcerated Individuals.**   The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.**   The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found.   A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS.   Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files.   For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **National Name Check Program (NNCP).**   The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.   Please be advised that this is a service provided to other federal agencies.   Private Citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
JUDICIAL WATCH, INC,                                    )
                                                        )
        Plaintiff,                                      )
                                                        )
            v.                                          )        Civ. A. No. 1:19-cv-00177-EGS
                                                        )
U.S. DEPARTMENT OF JUSTICE,                             )
                                                        )
        Defendant.                                      )
_____)


# EXHIBIT I



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D.C. 20535

September 4, 2020

MR. WILLIAM F. MARSHALL
c/o JAMES F. PETERSON, ESQUIRE
JUDICIAL WATCH
SUITE 800
425 THIRD STREET SW
WASHINGTON, DC 20024

FOIPA Request No.: 1393291-000
Subject: Any and All Records of Communication
between James Baker and Christopher Steele, Glenn
Simpson, Nellie Ohr and/or David Corn.
(January 1, 2016 - Present)

*Judicial Watch, Inc. v. United States Department of
Justice*
Civil Action No.: 1:19-cv-00177-EGS

Dear Mr. Marshall:

This letter is in response to your Freedom of Information/Privacy Acts (FOIPA) request. The FBI conducted an additional review of the material consisting of 28 pages it previously withheld in its entirety pursuant to Title 5, U.S. Code, § 552, subsections (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E) and determined portions of information could be segregated for release therein.   Accordingly, attached is a supplemental release of the 28 pages. Of the 28 pages, 21 pages are being released in full, 4 pages are being released in part, and 3 pages are duplicates of another page released in part therein.   Information was withheld pursuant to Title 5, U.S.C. § 552, subsections (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E).

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

Michael G. Seidel
Section Chief,
Record/Information
   Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.   Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)     **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].   FBI responses are limited to those records subject to the requirements of the FOIPA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)    **Intelligence Records**.   To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)     **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)    **Requests for Records about any Individual—Witness Security Program Records.**   The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)   **Requests for Records for Incarcerated Individuals.**   The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)     **Record Searches.**   The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found.   A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS.   Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files.   For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)    **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)   **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

(iv)    **National Name Check Program (NNCP).**   The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.   Please be advised that this is a service provided to other federal agencies.   Private Citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

b6 -1
b7C -1
b7E -2

FD-302 (Rev. 5-8-10)

- 1 of 2 -

~~SECRET//NOFORN~~

DECLASSIFIED BY: NSICG
ON 06-02-2020

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry   02/07/2017

(U//~~FOUO~~)  JAMES BAKER, General Counsel of the Federal Bureau of
Investigation (FBI) was interviewed at his office in FBI Headquarters by
the writer and Special Agent [_____]  After being advised of the
identity of the interviewing Agents, and the nature of the interview, BAKER
provided the following information:

b6 -1
b7C -1

(U)  ~~(S//NF)~~  The interviewing agents advised BAKER that the purpose of the
interview was to document his interactions with DAVID CORN, a journalist
employed by the publication *Mother Jones*, in which CORN provided BAKER with
documents from a former intelligence officer. This individual also was
former FBI Confidential Human Source (CHS) codenamed [_____]. BAKER advised
that he and CORN have been friends for years. On or about 11/6/2016 he
spoke with CORN, and he (CORN) brought up to BAKER that a former
intelligence official was passing information "around town" about
Republican Presidential nominee DONALD TRUMP. He asked BAKER if the FBI
wanted the information. BAKER advised him to send him the information so
that he (BAKER) could pass it to the appropriate FBI personnel to evaluate.
CORN then emailed BAKER the documents from the former intelligence official
[_____]. After receiving the information BAKER forwarded the documents to
WILLIAM PRIESTAP, the FBI's Assistant Director (AD) for
Counterintelligence.

b7E -1

b7E -1

(U)  ~~(S//NF)~~  Approximately two weeks after the Presidential election, CORN
and BAKER spoke again about the matter, and CORN advised that some of the
information provided by the former intelligence official [_____] was of
such a salacious nature that CORN was afraid to publish it without
corroborating it through a second source, or  through citing the existence
of an investigation by the U.S. government into the matter. BAKER advised
that he did NOT/NOT discuss with CORN the existence of any FBI
investigation into TRUMP or [_____] allegations.

b7E -1

b7E -1

(U)  ~~(S//NF)~~  During this conversation CORN also advised BAKER that [_____]

b7E -1

Reason: 1.4(b)
Derived From: FBI
NSISC-20090615
Declassify On: 20411231

~~SECRET//NOFORN~~

Investigation on  12/19/2016  at  Washington, District Of Columbia, United States (In Person)

b3 -1
b6 -1
b7C -1
b7E -2

File #

by

Date drafted  12/22/2016

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FBI(19cv00177)-1

b3 -1
b7E -2

FD-302a (Rev. 05-08-10)

~~SECRET~~//~~NOFORN~~

Continuation of FD-302 of    (U/~~FOUO~~) Interview of FBI General Counsel
James Baker                                    , On  12/19/2016 , Page  2 of 2

reports were also provided to Congressional Representative NANCY PELOSI and
Representative ELIJAH CUMMINGS. CORN was aware that ⬚ was surprised
that his reporting did not get more attention in the media. BAKER and CORN
have note had additional conversations on ⬚ reports.

b7E -1

(U) ✗✗//✗✗

b3 -1
b6 -2
b7C -2
b7E -1

(U) ✗✗//✗✗ BAKER advised that he understood that ⬚ reports were
prepared for a Republican consultant who distributed them around
Washington, D.C.

b7E -1

FBI(19cv00177)-2

**Priestap, E. W. (CD) (FBI)**

| | |
|---|---|
| **From:** | Priestap, E. W. (CD) (FBI) |
| **Sent:** | Sunday, November 6, 2016 1:20 PM |
| **To:** | Jim Baker |
| **Subject:** | RE: Memos |

Got it - thanks Jim.

--

-------- Original message --------
From: Jim Baker                                                    b6 -1, 3
Date: 11/06/2016 12:58 PM (GMT-05:00)                             b7C -1, 3
To: "Priestap, E. W. (CD) (FBI)"
Subject: Fwd: Memos

Bill,

Please see attached per our conversation last night.

Jim

Sent from my iPhone

Begin forwarded message:

    **From:** David Corn                                      b6 -2, 3
    **Date:** November 6, 2016 at 10:26:22 AM EST            b7C -2, 3
    **To:**
    **Subject: Memos**

    The home scanner worked. Here are the memos.

**FEDERAL BUREAU OF INVESTIGATION**

**FOI/PA**
**DELETED PAGE INFORMATION SHEET**
**Civil Action# 1:19-cv-00177-EGS**
**Total Withheld Page(s) = 3**

| Bates Page Reference | Reason for Withholding (i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
|---|---|
| FBI(19cv00177) 4 | Duplicate to Bates Page 3 (1 page) |
| FBI(19cv00177) 5 | Duplicate to Bates Page 3 (1 page) |
| FBI(19cv00177) 6 | Duplicate to Bates Page 3 (1 page) |

```
XXXXXXXXXXXXXXXXXXXXXX
X  Deleted Page(s)    X
X No Duplication Fee  X
X  For this Page      X
XXXXXXXXXXXXXXXXXXXXXX
```

**Priestap, E. W. (CD) (FBI)**

| | | |
|---|---|---|
| **From:** | Priestap, E. W. (CD) (FBI) | |
| **Sent:** | Monday, November 7, 2016 7:19 AM | |
| **To:** | [ ] (WF) (FBI) | **b6 -1** |
| **Cc:** | Moffa, Jonathan C. (CD) (FBI); Strzok, Peter P. (CD) (FBI) | **b7C -1** |
| **Subject:** | FW: Memos | |
| **Attachments:** | Memos.pdf; ATT00001.htm | |

[ ]                                                                              **b6 -1**
                                                                                 **b7C -1**

Journalist David Corn provided the attached documents to General Counsel Jim Baker, who provided them to me.

Please have someone review the documents to determine whether they contain any information of which we're not aware.  Also, please let me know what you learn.  (We can discuss following today's 11 AM meeting.)

Thank you,
Bill

CONFIDENTIAL/SENSITIVE SOURCE

COMPANY INTELLIGENCE REPORT 2016/080

## US PRESIDENTIAL ELECTION: REPUBLICAN CANDIDATE DONALD TRUMP'S ACTIVITIES IN RUSSIA AND COMPROMISING RELATIONSHIP WITH THE KREMLIN

### Summary

- Russian regime has been cultivating, supporting and assisting TRUMP for at least 5 years. Aim, endorsed by PUTIN, has been to encourage splits and divisions in western alliance

- So far TRUMP has declined various sweetener real estate business deals offered him in Russia in order to further the Kremlin's cultivation of him. However he and his inner circle have accepted a regular flow of intelligence from the Kremlin, including on his Democratic and other political rivals

- ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ FSB has compromised TRUMP through his activities in Moscow sufficiently to be able to blackmail him. According to several knowledgeable sources, his conduct in Moscow has included perverted sexual acts which have been arranged/monitored by the FSB

- A dossier of compromising material on Hillary CLINTON has been collated by the Russian Intelligence Services over many years and mainly comprises bugged conversations she had on various visits to Russia and intercepted phone calls rather than any embarrassing conduct. The dossier is controlled by Kremlin spokesman, PESKOV, directly on PUTIN's orders. However it has not as yet been distributed abroad, including to TRUMP. Russian intentions for its deployment still unclear

### Detail

1. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ the Russian authorities had been cultivating and supporting US Republican presidential candidate, Donald TRUMP for at least 5 years. ▅▅▅▅▅▅ the TRUMP operation was both supported and directed by Russian President Vladimir PUTIN. Its aim was to sow discord and

CONFIDENTIAL/SENSITIVE SOURCE

CONFIDENTIAL/SENSITIVE SOURCE

disunity both within the US itself, but more especially within the Transatlantic alliance which was viewed as inimical to Russia's interests. ███████████████████████████ *the TRUMP operation should be seen in terms of* PUTIN's desire to return to Nineteenth Century 'Great Power' politics anchored upon countries' interests rather than the ideals-based international order established after World War ████████████████████

2.  ██████████████████████ the Kremlin had been feeding TRUMP and his team valuable intelligence on his opponents, including Democratic presidential candidate Hillary CLINTON, for several years (see more below). This was confirmed by ████████████████████ who reported, also in June 2016, that this Russian intelligence had been "very helpful". The Kremlin's cultivation operation on TRUMP also had comprised offering him various lucrative real estate development business deals in Russia, especially in relation to the ongoing 2018 World Cup soccer tournament. However, so far, for reasons unknown, TRUMP had not taken up any of these.

3.  However, there were other aspects to TRUMP's engagement with the Russian authorities. One which had borne fruit for them was to exploit TRUMP's personal obsessions and sexual perversion in order to obtain suitable 'kompromat' (compromising material) on him. ████████████████ TRUMP's ████████ conduct in Moscow included hiring the presidential suite of the Ritz Carlton Hotel, where he knew President and Mrs OBAMA (whom he hated) had stayed on one of their official trips to Russia, and defiling the bed where they had slept by employing a number of prostitutes to perform a 'golden showers' (urination) show in front of him. The hotel was known to be under FSB control with microphones and concealed cameras in all the main rooms to record anything they wanted to.

4.  The Moscow Ritz Carlton episode involving TRUMP ████████



happened in 2013. ████████████ TRUMP's unorthodox behavior in Russia over the years had provided the authorities there with enough embarrassing material on the now Republican presidential candidate to be able to blackmail him if they so wished.

5.  ████████████ Kremlin's reported intelligence feed to TRUMP over recent years and rumours about a Russian dossier of 'kompromat' on

CONFIDENTIAL/SENSITIVE SOURCE

CONFIDENTIAL/SENSITIVE SOURCE

Hillary CLINTON ████████████████████████████ ██████████████████████████████████████ had been collated
by Department K of the FSB for many years, dating back to her husband
Bill's presidency, and comprised mainly eavesdropped conversations of
various sorts rather than details/evidence of unorthodox or
embarrassing behavior. Some of the conversations were from bugged
comments CLINTON had made on her various trips to Russia and focused
on things she had said which contradicted her current position on various
issues. Others were most probably from phone intercepts.

6.     ████ he CLINTON dossier was controlled exclusively by chief Kremlin
spokesman, Dmitriy PESKOV, who was responsible for
compiling/handling it on the explicit instructions of PUTIN himself. The
dossier however had not as yet been made available abroad, including to
TRUMP or his campaign team. At present it was unclear what PUTIN's
intentions were in this regard.

20 June 2016

CONFIDENTIAL/SENSITIVE SOURCE

COMPANY INTELLIGENCE REPORT 2016/94

RUSSIA: SECRET KREMLIN MEETINGS ATTENDED BY TRUMP ADVISOR, CARTER PAGE IN MOSCOW (JULY 2016)

## Summary

- TRUMP advisor Carter PAGE holds secret meetings in Moscow with SECHIN and senior Kremlin Internal Affairs official, DIVYEKIN

- SECHIN raises issues of future bilateral US-Russia energy co-operation and associated lifting of western sanctions against Russia over Ukraine. PAGE non-committal in response

- DIVEYKIN discusses release of Russian dossier of 'kompromat' on TRUMP's opponent, Hillary CLINTON, but also hints at Kremlin possession of such material on TRUMP

## Detail

1. ███████████████████████ S-sanctioned individual, Igor SECHIN ██████ recent secret meeting between him and visiting Foreign Affairs Advisor to Republican presidential candidate Donald TRUMP, Carter PAGE.

2. ███████████████████████ the Rosneft President (CEO) had raised with PAGE the issues of future bilateral energy cooperation and prospects for an associated move to lift Ukraine-related western sanctions against Russia. PAGE had reacted positively to this demarche by SECHIN but had been generally non-committal in response.

3. ███████████████████████ a senior ██████ in the Internal Political Department of the PA, DIVEYKIN (nfd) also had met secretly with PAGE on his recent visit. Their agenda had included DIVEYKIN raising a dossier of 'kompromat' the Kremlin possessed on TRUMP's Democratic presidential rival, Hillary CLINTON, and its possible release to the Republican's campaign team.

4. █████████████████████████ DIVEYKIN also had hinted (or indicated more strongly) that the Russian leadership also had 'kompromat' on TRUMP which the latter should bear in mind in his dealings with them.

**19 July 2016**

FBI(19cv00177)-12

CONFIDENTIAL/SENSITIVE SOURCE

**COMPANY INTELLIGENCE REPORT 2016/095**

**RUSSIA/US PRESIDENTIAL ELECTION: FURTHER INDICATIONS OF EXTENSIVE CONSPIRACY BETWEEN TRUMP'S CAMPAIGN TEAM AND THE KREMLIN**

Summary

- Further evidence of extensive conspiracy between TRUMP's campaign team and Kremlin, sanctioned at highest levels and involving Russian diplomatic staff based in the US

- TRUMP associate admits Kremlin behind recent appearance of DNC e-mails on WikiLeaks, as means of maintaining plausible deniability

- Agreed exchange of information established in both directions. TRUMP's team using moles within DNC and hackers in the US as well as outside in Russia. PUTIN motivated by fear and hatred of Hillary CLINTON. Russians receiving intel from TRUMP's team on Russian oligarchs and their families in US

- Mechanism for transmitting this intelligence involves "pension" disbursements to Russian emigres living in US as cover, using consular officials in New York, DC and Miami

- ██████████████████████████████████████████

Detail

1.  ████████████████ close associate of Republican US presidential candidate Donald TRUMP, admitted that there was a well-developed conspiracy of co-operation between them and the Russian leadership. This was managed on the TRUMP side by the Republican candidate's campaign manager, Paul MANAFORT, who was using foreign policy advisor, Carter PAGE, and others as intermediaries. The two sides had a mutual interest in defeating Democratic presidential candidate Hillary CLINTON, whom President PUTIN apparently both hated and feared.

2.  ████████████████ acknowledged that the Russian regime had been behind the recent leak of embarrassing e-mail messages, emanating from the Democratic National Committee (DNC), to the WikiLeaks platform.

CONFIDENTIAL/SENSITIVE SOURCE

The reason for using WikiLeaks was "plausible deniability" and the operation had been conducted with the full knowledge and support of TRUMP and senior members of his campaign team. In return the TRUMP team had agreed to sideline Russian intervention in Ukraine as a campaign issue and to raise US/NATO defence commitments in the Baltics and Eastern Europe to deflect attention away from Ukraine, a priority for PUTIN who needed to cauterise the subject.



intelligence network being used against CLINTON comprised three elements. Firstly there were agents/facilitators within the Democratic Party structure itself; secondly Russian émigré and associated offensive cyber operators based in the US; and thirdly, state-sponsored cyber operatives working in Russia. All three elements had played an important role to date.

4.  In terms of the intelligence flow from the TRUMP team to Russia, much of this concerned the activities of business oligarchs and their families' activities and assets in the US, with which PUTIN and the Kremlin seemed preoccupied.

5.  

6.  Finally, regarding TRUMP's claimed minimal investment profile in Russia, TRUMP's previous efforts had included exploring the real estate sector in St Petersburg as well as Moscow but in the end TRUMP had had to settle for the use of extensive sexual services there from local prostitutes rather than business success.

**19 July 2016**

FBI(19cv00177)-15

COMPANY INTELLIGENCE REPORT 2016/097

RUSSIA-US PRESIDENTIAL ELECTION: KREMLIN CONCERN THAT POLITICAL FALLOUT FROM DNC E-MAIL HACKING AFFAIR SPIRALLING OUT OF CONTROL

Summary

Kremlin concerned that political fallout from DNC e mail hacking operation is spiralling out of control. Extreme nervousness among TRUMP's associates as result of negative media attention/accusations

Russians meanwhile keen to cool situation and maintain 'plausible deniability' of existing /ongoing pro TRUMP and anti CLINTON operations. Therefore unlikely to be any ratcheting up offensive plays in immediate future

Source ████████████████████ confirms regular exchange with Kremlin has existed for at least 8 years, including intelligence fed back to Russia on oligarchs' activities in US

Russians apparently have promised not to use 'kompromat' they hold on TRUMP as leverage, given high levels of voluntary co operation forthcoming from his team

Detail

1.   high level of anxiety within the TRUMP team as a result of various accusations levelled against them and indications from the Kremlin that President PUTIN and others in the leadership thought things had gone too far now and risked spiralling out of control.

2.  ████████████████████████████Kremlin wanted the situation to calm but for 'plausible deniability' to be maintained concerning its (extensive) pro TRUMP and anti CLINTON operations ████████ ██████████████████████████████

3.  ████████████████████confirmed that an intelligence exchange had been running between them for at least 8 years. Within this context PUTIN's priority requirement had been for intelligence on the activities, business and otherwise, in the US of leading Russian oligarchs and their families. TRUMP and his associates duly had obtained and supplied the Kremlin with this information.

FBI(19cv00177)-16

4. ██████████████████████████████████████████

As far as 'kompromat' (compromising information) on TRUMP were concerned, although there was plenty of this, he understood the Kremlin had given its word that it would not be deployed against the Republican presidential candidate given how helpful and co operative his team had been over several years, and particularly of late.

30 July 2016

COMPANY INTELLIGENCE REPORT 2016/105

## RUSSIA/UKRAINE: THE DEMISE OF TRUMP'S CAMPAIGN MANAGER PAUL MANAFORT

### Summary

- Ex-Ukrainian President YANUKOVYCH confides directly to PUTIN that he authorised kick-back payments to MANAFORT, as alleged in western media. Assures Russian President however there is no documentary evidence/trail

- PUTIN and Russian leadership remain worried however and sceptical that YANUKOVYCH has fully covered the traces of these payments to TRUMP's former campaign manager



### Detail

1. ████████████████████████████████████ recent meeting between President PUTIN and ex-President YANUKOVYCH of Ukraine. This had been held in secret on 15 August near Volgograd, Russia and the western media revelations about MANAFORT and Ukraine had featured prominently on the agenda. YANUKOVYCH had confided in PUTIN that he did authorise and order substantial kick-back payments to MANAFORT as alleged but sought to reassure him that there was no documentary trail left behind which could provide clear evidence of this.

2. Given YANUKOVYCH's (unimpressive) record in covering up his own corrupt tracks in the past, PUTIN and others in the Russian leadership were sceptical about the ex-Ukrainian president's reassurances on this as relating to MANAFORT. They therefore still feared the scandal had legs, especially as MANAFORT had been commercially active in Ukraine right up to the time (in March 2016) when he joined TRUMP's campaign team. For them it therefore remained a point of potential political vulnerability and embarrassment.

3. 

22 August 2016

COMPANY INTELLIGENCE REPORT 2016/111

## RUSSIA/US: KREMLIN FALLOUT FROM MEDIA EXPOSURE OF MOSCOW'S INTERFERENCE IN THE US PRESIDENTIAL CAMPAIGN

### Summary

- Kremlin orders senior staff to remain silent in media and private on allegations of Russian interference in US presidential campaign

- ████████████████████ IVANOV sacked as Head of Administration on account of giving PUTIN poor advice on issue. VAINO selected as his replacement partly because he was not involved in pro-TRUMP, anti-CLINTON operation/s

- Russians do have further 'kompromat' on CLINTON (e-mails) and considering disseminating it after Duma (legislative elections) in late September. Presidential spokesman PESKOV continues to lead on this

- However, equally important is Kremlin objective to shift policy consensus favourably to Russia in US post-OBAMA whoever wins. Both presidential candidates' opposition to TPP and TTIP viewed as a result in this respect

- Senior Russian diplomat withdrawn from Washington embassy on account of potential exposure in US presidential election operation/s

### Detail



2. ████████████████████████████ PUTIN had been receiving conflicting advice on interfering from three separate and expert groups. On one side had been the Russian ambassador to the US, Sergei KISLYAK, and the Ministry of Foreign Affairs, together with an independent and informal network run by presidential foreign policy advisor, Yuri USHAKOV

(KISLYAK's predecessor in Washington) who had urged caution and the potential negative impact on Russia from the operation/s. On the other side was former PA Head, Sergei IVANOV, backed by Russian Foreign Intelligence (SVR), who had advised PUTIN that the pro-TRUMP, anti-CLINTON operation/s would be both effective and plausibly deniable with little blowback. The first group/s had been proven right and this had been the catalyst in PUTIN's decision to sack IVANOV (unexpectedly) as PA Head in August. His successor, Anton VAINO, had been selected for the job partly because he had not been involved in the US presidential election operation/s.

3. ███████████████████████ Kremlin had further 'kompromat' on candidate CLINTON and had been considering releasing this via "plausibly deniable" channels after the Duma (legislative) elections were out of the way in mid-September. There was however a growing train of thought and associated lobby, arguing that the Russians could still make candidate CLINTON look "weak and stupid" by provoking her into railing against PUTIN and Russia without the need to release more of her e-mails. Presidential Spokesman, Dmitriy PESKOV remained a key figure in the operation, although any final decision on dissemination of further material would be taken by PUTIN himself.

4. ██████████████████████████████ Moscow's intervention in the US presidential election campaign was the objective of shifting the US political consensus in Russia's perceived interests regardless of who won. It basically comprised of pushing candidate CLINTON away from President OBAMA's policies. The best example of this was that both candidates now openly opposed the draft trade agreements, TPP and TTIP, which were assessed by Moscow as detrimental to Russian interests. Other issues where the Kremlin was looking to shift the US policy consensus were Ukraine and Syria. Overall however, the presidential election was considered still to be too close to call.

5. ███████████████████████████ a leading Russian diplomat, Mikhail KULAGIN, ████████ withdrawn from Washington at short notice because Moscow feared his heavy involvement in the US presidential election operation, including the so-called veterans' pensions ruse (reported previously), would be exposed in the media there. His replacement, Andrei BONDAREV however was clean in this regard.



**14 September 2016**

COMPANY INTELLIGENCE REPORT 2016/112

## RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION

**Summary**

- ███████████████████████ Significant favours continue to be done in both directions and FRIDMAN and AVEN still giving informal advice to PUTIN, especially on the US

- Key intermediary in PUTIN-Alpha relationship identified as Oleg GOVORUN, currently Head of a Presidential Administration department but throughout the 1990s, the Alpha executive who delivered illicit cash directly to PUTIN

- PUTIN personally unbothered about Alpha's current lack of investment in Russia but under pressure from colleagues over this and able to exploit it as lever over Alpha interlocutors

**Detail**

1. ████████████████████████████████████ although they had had their ups and downs, the leading figures in Alpha currently ████ on very good terms with PUTIN. Significant favours continued to be done in both directions, primarily political ones for PUTIN and business/legal ones for Alpha. Also, FRIDMAN and AVEN continued to give informal advice to PUTIN on foreign policy, and especially about the US where he distrusted advice being given to him by officials.

2. Although FRIDMAN recently had met directly with PUTIN in Russia, much of the dialogue and business between them was mediated through a senior Presidential Administration official, Oleg GOVORUN, who currently headed the department therein responsible for Social Co-operation With the CIS. GOVORUN was trusted by PUTIN and recently had accompanied him to Uzbekistan to pay respects at the tomb of former president KARIMOV. ████████████████████ during the 1990s GOVORUN had been Head of Government Relations at Alpha Group and in reality, the "driver" and "bag carrier"

used by FRIDMAN and AVEN to deliver large amounts of illicit cash to the Russian president, at that time deputy Mayor of St Petersburg. Given that and the continuing sensitivity of the PUTIN-Alpha relationship, and need for plausible deniability, much of the contact between them was now indirect and entrusted to the relatively low profile GOVORUN.

3. ███████████████████████████████ lpha held 'kompromat' on PUTIN and his corrupt business activities from the 1990s whilst although not personally overly bothered by Alpha's failure to reinvest the proceeds of its TNK oil company sale into the Russian economy since, the Russian president was able to use pressure·on this count from senior Kremlin colleagues as a lever on FRIDMAN and AVEN to make them do his political bidding.

**14 September 2016**

COMPANY INTELLIGENCE REPORT 2016/134

## RUSSIA/US PRESIDENTIAL ELECTION: FURTHER DETAILS OF KREMLIN LIAISON WITH TRUMP CAMPAIGN

Summary

- ███████████SECHIN███████ secret meeting in Moscow with Carter PAGE in July

- Substance included offer of large stake in Rosneft in return for lifting sanctions on Russia. PAGE confirms this is TRUMP's intention

- ████████████████████████████████████████████
████████████████████████

- ██████████████████████████ TRUMP's lawyer, Michael COHEN in covert relationship with Russia. COHEN's wife is of Russian descent and her father a leading property developer in Moscow

Detail

1. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
   The secret meeting ███████████████████ took place on either 7 or 8 July, the same day or the one after Carter PAGE made a public speech to the Higher Economic School in Moscow.

2. ██████████████████████████████████the Rosneft President was so keen to lift personal and corporate western sanctions imposed on the company, that he offered PAGE/TRUMP's associates the brokerage of up to a 19 per cent (privatised) stake in Rosneft in return. PAGE had expressed interest and confirmed that were TRUMP elected US president, then sanctions on Russia would be lifted.

3. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

4. ████████████████████████████████ a key role in the secret TRUMP campaign/Kremlin relationship was being played by the Republican candidate's personal lawyer Michael COHEN. COHEN had a wife of Russian origin, whose father, Efim SHUSTERMAN, was a leading Moscow property developer.

**Source Comment**

■ ▬▬▬▬▬▬▬▬▬▬▬▬▬although PAGE had not stated it explicitly to SECHIN, he had clearly implied that in terms of his comment on TRUMP's intention to lift Russian sanctions if elected president, he was speaking with the Republican candidate's authority.

**Company Comment**

6.  It appears that SHUSTERMAN has a country house (dacha) in the settlement of Barvikha, west of Moscow. This village is reserved for the residences of the top leadership and their close associates.

18 October 2016

COMPANY INTELLIGENCE REPORT 2016/136

## RUSSIA/US PRESIDENTIAL ELECTION: FURTHER DETAILS OF TRUMP LAWYER COHEN'S SECRET LIAISON WITH THE KREMLIN

### Summary

- ███████████████TRUMP lawyer COHEN's secret meeting/s with Kremlin officials in August 2016 was/were held in Prague

- Russian parastatal organisation Rossotrudnichestvo used as cover for this liaison and premises in Czech capital may have been used for the meeting/s

- Pro-PUTIN leading Duma figure, KOSACHEV, reportedly involved as█████████████ facilitator and may have participated in the August meeting/s with COHEN

### Detail

1. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████

2. ████████████████████████████████████
████████████████████Rossotrudnichestvo████████ used as cover for this relationship and its office in Prague may well have been used to host the COHEN/Russian Presidential Administration (PA) meeting/s.████████████████████

3. ████████████████leading pro-PUTIN Duma figure, Konstantin KOSACHEV (Head of the Foreign Relations Committee)█ an important figure in the TRUMP campaign-Kremlin liaison operation,████████████████████
████████████facilitated the contact in Prague and█
████████████may have attended the meeting/s with COHEN there in August.

### Company Comment

████████████████████████████████████████
████████████████████████████████████████
████████████This was in order to clean up the mess left behind by western media revelations of TRUMP ex-campaign manager MANAFORT's corrupt relationship with the former pro-Russian YANUKOVYCH regime in Ukraine and TRUMP foreign policy advisor, Carter PAGE's secret meetings in Moscow with senior regime figures in July 2016.████████████
████████████████these meeting/s were originally scheduled for COHEN in Moscow but shifted to

what was considered an operationally "soft" EU country when it was judged too compromising for him to travel to the Russian capital.

20 October 2016

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
JUDICIAL WATCH, INC,                      )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )        Civ. A. No. 1:19-cv-00177-EGS
                                          )
U.S. DEPARTMENT OF JUSTICE,               )
                                          )
        Defendant.                        )
_____)

# EXHIBIT J

*JUDICIAL WATCH, INC. v. U.S. DEPARTMENT OF JUSTICE*
1:19-cv-00177-EGS
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## *Vaughn* Index

This index describes only those pages that were released in part or withheld in full.  Bates pages FBI(19cv00177)-8 through 28 were released in full.

| SUMMARY OF FOIA EXEMPTION JUSTIFICATION CATEGORIES ||
| --- | --- |
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **EXEMPTION (b)(3)** | **INFORMATION PROTECTED BY STATUE** |
| (b)(3)-1 | National Security Act of 1947 [50 USC Section 3024(i)(1)] *[cited at all times in conjunction with (b)(7)(E)]* |
| **EXEMPTION (b)(6) and EXEMPTION (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Identifying Information of FBI Special Agents and an FBI Employee Unique Employee Identification Number ("UEID") |
| (b)(6)-2 and (b)(7)(C)-2 | Name and Identifying Information of a Third Party Merely Mentioned |
| (b)(6)-3 and (b)(7)(C)-3 | Government Employee's Personal E-mail Address |
| **EXEMPTION (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-1 | Confidential Human Source ("CHS") Program Information |
| (b)(7)(E)-2 | Sensitive Investigative File Numbers *[cited at all times in conjunction with (b)(3)]* |

## INDEX KEY

RIF: Released in Full

RIP: Released in Part

WIF: Withheld in Full

Dup: Duplicate page that was withheld in full

Dup of: Location of original copy

## FBI DOCUMENT TYPES

| | |
|---|---|
| FD-302s: | FD-302s are internal FBI forms in which evidence is often documented, usually the results of FBI interviews.  Such evidence and/or interview information may later be used as testimony or evidence in court proceedings/trials.  Additionally, these evidence/interview forms are often incorporated in other FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts. |
| Electronic Mail Messages (E-mails): | These documents consist of E-mails between FBI personnel, between FBI personnel and private citizens/corporations, between FBI personnel and Other Government Agency (OGA) perssonnel, and/or between FBI personnel and state and local law enforcement agencies.. |

| WIF Description | Bates | b3 | 6/7C 1 | 6/7C 2 | 6/7C 3 | 7E 1 | 7E 2 | DRIF | RIP | Dup | Dup of |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | X | X | | | X | X | | X | | |
| FD-302 interview of James Baker taken on December 19, 2016 | 2 | X | | X | | X | X | | X | | |
| E-mail chain dated November 6, 2016 wherein David Corn sent 21 pages of reports authored by Christopher Steele to James Baker's personal email account, who forwarded them to E.W. Priestap's unclassified FBI email account, who in turn replied to acknowledge receipt | 3 | | X | X | X | | | | X | | |
| Duplicate | 4 | | | | | | | | | X | Bates-numbered page 3 |
| Duplicate | 5 | | | | | | | | | X | Bates-numbered page 3 |
| Duplicate | 6 | | | | | | | | | X | Bates-numbered page 3 |
| E-mail dated November 7, 2016 from E.W. Priestep to other FBI personnel sending them the reports | 7 | | X | | | | | | X | | |

# 1:19-cv-00177-EGS
## Page Disposition Totals

| Page Disposition Totals | |
|---|---|
| **Total:** 7 | |
| RIP: 4 | |
| WIF: 3 | |
| • Duplicate: | 3 |